**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LEAH H.,

                                        Plaintiff,

v.                                                                3:20-CV-455
                                                                  (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

Lachman & Gorton                        PETER A. GORTON, ESQ.
1500 E. Main Street
P.O. Box 89
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration          AMELIA STEWART, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


### MEMORANDUM-DECISION & ORDER[1]

        Plaintiff Leah H.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

"defendant") denying her applications for disability insurance benefits and supplemental security income benefits.  Dkt. No. 1.  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 13, 18.  For the reasons set forth below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further administrative proceedings.

## I.    Background[3]

### A.  Factual Background

Plaintiff was born on July 13, 1975.  T. 185, 342.  She is a high school graduate, who has taken some college courses but has not yet earned a degree.  Id. at 185, 690. Plaintiff's employment history includes work as a receptionist, medical assistant, call center staffer, and most recently, as a data entry clerk.  Id. at 186-191, 418-423.

Plaintiff reported that she was terminated from her most recent employment due to difficulties caused by anxiety, depression, and alcohol abuse.  T at 197-198.  She testified that she had abstained from alcohol for the past several years.  Id. at 198. Plaintiff also suffered from osteoarthritis that caused significant pain in her neck, back, and knees when engaged in physical activity.  Id. at 199-201, 696, 708.  She testified that her mental and physical impairments made it difficult for her to leave her apartment, and that she required assistance with tasks such as grocery shopping.  Id. at 192-193, 197, 203-204.

---

[3]  References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

## B.  Procedural Background

On July 12, 2016, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act.  T. at 342-352. Each application alleged a disability onset date of November 4, 2013.  Id. at 342, 345.  Both applications were denied on September 8, 2016, and plaintiff requested a hearing on October 10, 2016.  Id. at 219-262, 267-268.  Plaintiff appeared at her August 20, 2018, hearing with counsel and testified before Administrative Law Judge Elizabeth W. Koennecke.  Id. at 180-207.  ALJ Koennecke held a supplemental hearing on January 9, 2019, to hear the testimony of vocational expert ("VE") Quentin Boston.  Id. at 208-218.  Plaintiff waived her appearance at this hearing but counsel was present.  Id. at 211-212.

On January 17, 2019, ALJ Koennecke rendered an unfavorable decision, and plaintiff appealed. T. 18-41, 340.  While the appeal was pending, plaintiff's counsel submitted new medical opinions and other evidence to the Appeals Council.  T. 8-15, 42-179.  The Appeals Council denied plaintiff's request for review on February 21, 2020, stating in relevant part:

> . . . you submitted evidence [from] Anne Calkins, MD dated March 15, 2019 (5 pages) and Caroline Murphy, NP of the Family and Children's Society dated February 27, 2019 (4 pages).  The Administrative Law Judge decided your case through January 17, 2019.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before January 17, 2019.

Id. 1-7.  Plaintiff timely commenced this action on April 20, 2020. Dkt. No. 1.

## C.  The ALJ Decision

The ALJ first determined that plaintiff met the insured status required through June 30, 2017. T. at 24. Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since November 4, 2013, the alleged onset date. Id. The ALJ found at step two of the sequential evaluation that plaintiff had the severe impairments of obesity, myofacial pain syndrome and "all mental impairments as variously characterized." Id. at 24-26. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 26-28. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") "to perform less than the full range of light work. Id. at 28-34. Specifically, the ALJ found that plaintiff could understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with all others to the extent necessary to carry out simple tasks and handle simple, repetitive work-related stress in that plaintiff can make occasional decisions directly related to the performance of simple tasks in a stable, unchanging work environment. Id. at 28. At step four, the ALJ determined that plaintiff was unable to perform any of her past relevant work. Id. at 34. Considering plaintiff's RFC, age, education, and work experience, along with the VE testimony, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy, including laundry classifier, marker, and router. Id. at 35. Therefore, the ALJ determined that plaintiff

"has not been under a disability, as defined in the Social Security Act, from November 4, 2013 through the date of this decision."  Id. at 35.

### D. Medical Opinion Evidence

### 1. Dr. Mary Ann Moore

Dr. Mary Ann Moore performed a psychiatric evaluation of plaintiff on May 18, 2016, following a referral from the Broome County Department of Social Services.  T. at 690-695.  During the examination, Dr. Moore observed that plaintiff was generally cooperative and responsive to questions, with appropriate eye contact and normal motor behavior.  Id. at 692.  She exhibited a coherent and goal-directed thought process despite crying during the evaluation.  Id. at 693.  Plaintiff demonstrated intact attention and concentration, but impaired recent and remote memory that appeared affected by her depression and anxiety.  Id.

Based on this examination, Dr. Moore opined that plaintiff had no limitation with following and understanding simple directions and instructions and performing simple tasks independently; no limitation with maintaining attention and concentration; moderate limitations with learning new tasks and completing complex tasks independently; and moderate to marked limitations with appropriately dealing with stress, relating with others, making appropriate work decisions, and maintaining a regular schedule.  Id. at 694.  In Dr. Moore's opinion, "[t]he results of the examination appear to be consistent with psychiatric issues which may significantly interfere with the claimant's ability to function on a daily basis."  Id.

The ALJ assigned "some weight" to Dr. Moore's opinion.  Id. at 31.  She attributed this weight to Dr. Moore's status as an acceptable medical source who had examined plaintiff, and the consistency between Dr. Moore's findings and those of Dr. Slowik and Dr. Harding, whose opinions are discussed below.  Id.

### 2.  Dr. Amanda Slowik

On August 26, 2016, Dr. Amanda Slowik performed a consultative psychiatric evaluation of plaintiff.  T. at 701-706.  During the examination, Dr. Slowik observed that plaintiff was cooperative, with adequate social skills and appropriate eye contact, but restless motor behavior.  Id. at 703.  Plaintiff displayed a coherent and goal-oriented thought process and an anxious and dysthemic mood.  Id.  Plaintiff's attention and concentration appeared mildly impaired due to hrt anxiety but she showed a generally intact recent and remote memory.

Based on her examination, Dr. Slowik opined that plaintiff had mild limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and make appropriate decisions.  T. at 704.  Dr. Slowik further opined that plaintiff's ability to maintain a regular schedule, relate adequately with others, and appropriately deal with stress is "moderately to markedly limited," and that plaintiff's ability to learn new tasks and perform complex tasks independently is moderately limited.  Id.  In Dr. Slowik's opinion, these difficulties were caused by "distractibility, cognitive deficits, anxiety, and depression."  Id.  She further opined that the results of her evaluation "appear to be consistent with psychiatric issues which may be significant enough to interfere with the claimant's ability to function on a daily basis."  Id. at 705.

The ALJ assigned "some weight" to Dr. Slowik's opinion because "she is a program knowledgeable expert who examined the claimant." T. at 32. The ALJ also noted that Dr. Slowik's findings were generally consistent with those of Dr. Moore, but found no support for Dr. Slowik's description of marked limitations in plaintiff's ability to handle stress. Id.

### 3. Dr. T. Harding

State agency consultant Dr. T. Harding reviewed plaintiff's then-current psychiatric records on September 6, 2016 and offered his opinion of plaintiff's functional limitations. T. at 233-236. With respect to the functional area of understanding and memory, he opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, or her ability to understand and remember very short and simple instructions. Id. at 233. He further opined that plaintiff had moderate limitations in understanding and remembering detailed instructions. Id.

In the area of concentration and persistence, Dr. Harding opined that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Id. at 234. In his opinion, plaintiff had no significant limitations in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Id.

7

With regard to social interaction, Dr. Harding opined that plaintiff had moderate limitations in her ability to set realistic goals and make plans independently of others, but no significant limitations in her ability to respond appropriately to changes in the work setting, be aware of normal hazards, and travel to unfamiliar places or use public transportation.  Id. at 235.

The ALJ assigned "great weight" to Dr. Harding's opinion "because he is a program knowledgeable expert who examined a significant portion of the claimant's record of medical evidence." T. at 32.  The ALJ found that Dr. Harding had appropriately considered the medical evidence and "his findings are consistent with the complete record of medical evidence and the claimant's own testimony."  Id.

### 4.  Physician's Assistant ("PA") Kacy Zelesnikar

PA Zelesnikar had been plaintiff's primary care provider since January 2014 for her asthma, neck pain, and back pain.  T. at 676-679.  She had also referred plaintiff for mental health treatment.  Id. at 646-648.  On June 28, 2018, PA Zelesnikar completed separate medical source statements for plaintiff's physical and mental functional limitations.  Id. at 896-901.

PA Zelesnikar opined that plaintiff's physical impairments caused pain and fatigue, and that these symptoms would diminish plaintiff's ability to maintain adequate concentration and work pace, and would cause her to need to rest at work.  T.  at 896.  She further opined that this pain, fatigue, diminished concentration and work pace, and need to rest would lead plaintiff to be off task "[g]reater than 20% but less than 33%" of the workday and would likely lead to three days of missed work per month.  Id. at 896-897.

In PA Zelesnikar's opinion, plaintiff was able to sit for a total of approximately five hours per workday, but would need to change positions every thirty minutes.  T. at 897. She also opined that plaintiff was capable of standing or walking for an approximate total of five hours per day.  Id.  She also opined that plaintiff could frequently (up to 2/3 of the workday) lift up to five pounds, and could occasionally (up to 1/3 of the workday) lift weights greater than ten pounds.  Id.

With regard to mental health, PA Zelesnikar opined that plaintiff had marked limitations in her ability to maintain regular attendance without interruptions from psychologically-based symptoms, and medium limitations in her ability to maintain attention and concentration and perform activities within a schedule and at a consistent pace.  T. at 900.  She further opined that plaintiff had medium limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, and "more than slight" limitations in her ability to get along with co-workers and interact appropriately with the general public.  Id.  She also concluded that plaintiff had medium limitations with regard to responding appropriately to ordinary stressors in a work setting with simple tasks.  Id.  In PA Zelesnikar's opinion, plaintiff's mental health limitations would cause her to be off task "[g]reater than 20% but less than 33%" of a workday.  Id. at 901.  She also opined that these mental impairments were likely to cause plaintiff to be absent from work three or more days per month.  Id.

The ALJ assigned "less weight" to PA Zelesnikar's opinion of plaintiff's physical limitations because she was not an acceptable medical source.  T. at 32.  The ALJ found her recommendation of position changes every thirty minutes to be consistent with the overall record.  Id. The ALJ assigned "little" weight to PA Zelesnikar's opinion of

plaintiff's mental limitations, because PA Zelesnikar had not been actively treating plaintiff's mental health and did not cite any specific mental health testing to support her opinion.  Id.  In particular, the ALJ found that PA Zelesnikar's opinion regarding time off-task and absenteeism were speculative and inconsistent with plaintiff's ability to keep regular office appointments with her treatment providers.  Id.

### 5.  Dr. Gilbert Jenouri

Dr. Jenouri performed two consultative examinations of plaintiff.  Dr. Jenouri first examined plaintiff on May 18, 2016, at the request of Broome County Department of Social Services.  T. at 696-700.  Before this examination, plaintiff complained of continuous, sharp pain in her neck and lower back that radiated to both legs and was "precipitated by activity."  Id. at 696.  She also reported continuous sharp pain in her left knee.  Id.  During the examination, Dr. Jenouri observed that plaintiff appeared to be in no acute distress, with a normal gait but difficulty walking on heels and toes.  Id. at 697.  Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  Id. at 698.  Her lumbar spine showed full flexion ninety degrees, but reduced extension, lateral flexion, and rotary movement bilaterally.  Id.  She had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally, but reduced flexion and extension in both hips and her left knee.  Id.

Based on this examination, Dr. Jenouri opined in May 2016 that plaintiff was moderately limited to walking and standing for "periods of two hours and fewer than four hours"; pushing, pulling, and bending for periods of two hours and fewer than four hours; lifting or carrying twenty pounds occasionally and ten pounds frequently, and

climbing stairs for periods of two hours and fewer than four hours.  Id.  He also recommended that plaintiff avoid smoke, dust, and other respiratory irritants.  Id. at 699. The ALJ assigned "less weight" to Dr. Jenouri's May 2016 opinion because he did not have the benefit of imaging reports showing bilateral lower extremity radiculopathy.  Id. at 33.  She also found that the consultative examination did not support a limitation of walking and standing for two hours, and discounted his limitations on exposure to respiratory irritants in light of plaintiff's status as an active smoker.  Id.

Dr. Jenouri performed another consultative examination at the Commissioner's request on August 26, 2016.  T. at 708-712.  Plaintiff still reported sharp pain in her neck, upper back, and lower back and daily knee pain.  Id. at 708.  She also reported left ankle pain that occurred every day and was precipitated with activity.  Id.  Dr. Jenouri observed that plaintiff appeared to be in no acute distress with a normal gait, but was unable to walk on heels and toes without difficulty.  Id. at 709.  Plaintiff also displayed reduced flexion, extension, rotation, and lateral flexion in the cervical and lumbar spine.  Id. at 710.  Based on his August 2016 examination, Dr. Jenouri opined that plaintiff had mild restrictions with regard to "walking, bending, and sitting long periods, bending [sic], stair climbing, lifting, and carrying."  Id. at 711.  He further opined that plaintiff should avoid smoke, dust, and other known respiratory irritants.  Id.

The ALJ assigned "some weight" to Dr. Jenouri's August 2016 opinion.  T. at 33. She found his description of mild physical limitations consistent with the overall record and noted that he had reviewed x-rays of plaintiff's left ankle and lumbar spine.  Id.  She again discounted his opinion regarding respiratory irritants due to plaintiff's status as an

active smoker and the lack of records suggesting plaintiff suffered from asthma or other respiratory issues.  Id.

### 6.  Nurse Practitioner ("NP") Caroline Murphy

NP Murphy provided mental health treatment to plaintiff since at least July 2018. T. at 45.  On October 30, 2018, NP Murphy prepared an opinion on the psychiatric limitations that plaintiff experienced due to her diagnosed PTSD and bipolar disorder. Id. at 42-43.  Using a check-box form, NP Murphy opined that plaintiff had marked limitations in three functional areas: maintaining regular attendance without interruptions from psychologically-based symptoms; performing activities within a schedule, being punctual, and performing at a consistent pace; and responding appropriately to ordinary stressors in a work setting with simple tasks.  Id. at 42.  NP Murphy also noted that she believed that plaintiff's mental health impairments would cause her to be off-task during the workday and miss work, but she was unable to estimate a specific amount of time off-task or workdays missed per month.  Id. at 42-43.   NP Murphy's October 30, 2018 opinion was not available to the ALJ, but was provided to the Appeals Council as part of plaintiff's request for review.  Id. at 2, 8.  The Appeals Council concluded that this opinion did not show a reasonable probability that it would change the outcome of the ALJ's decision. Id. at 2.

NP Murphy issued another opinion on February 27, 2019, utilizing the same check-box form.  T. at 14-15.  She opined that plaintiff had moderate limitations in her ability to maintain regular attendance without interruptions from psychologically based symptoms, performing activities within a schedule, being punctual, and performing at a consistent pace.  Id. at 14.  She concluded that plaintiff had marked limitations in her

ability to respond appropriately to ordinary stressors in a work setting with simple tasks. Id.  She further concluded that plaintiff would be off-task during the workday and was likely to miss work due to her impairments but declined to estimate a specific amount of time off-task or days missed.  Id. at 14-15.  NP Murphy's February 27, 2019, opinion was not available to the ALJ, but was provided to the Appeals Council as part of plaintiff's request for review.  Id. at 2, 13.  The Appeals Council found that this opinion did "not relate to the period at issue" and therefore did not affect the ALJ's decision about whether plaintiff was disabled beginning on or before January 17, 2019.  Id. at 2.

### 7.  Dr. Ann Calkins

Dr. Calkins prepared an opinion dated March 15, 2019, addressing plaintiff's physical and mental limitations from December 4, 2018.  T. at 10.  She opined that plaintiff's conditions would cause pain and fatigue, and result in diminished concentration and work pace.  Id.  She also opined that plaintiff would need to rest at work.  Id.  Dr. Calkins estimated that these symptoms would cause plaintiff to be off-task "[g]reater than 20% but less than 33%" of the workday.  Id.  She further opined that plaintiff would have good days and bad days, and was likely to miss more than four days of work per month when her symptoms were at their worst.  Id. at 11.

Dr. Calkins opined that plaintiff could sit for approximately six hours out of the eight-hour workday, but would need to change positions approximately every fifteen minutes.  See id. at 11.  She also opined that plaintiff could stand or walk for approximately two hours out of an eight-hour workday.  Id.  With regard to lifting, Dr. Calkins estimated that plaintiff could occasionally lift up to ten pounds, but could never lift over ten pounds.  Id.

13

Dr. Calkins' March 15, 2019 opinion was not available to the ALJ, but was provided to the Appeals Council as part of plaintiff's request for review.  T. at 2, 9.  The Appeals Council found that this opinion did "not relate to the period at issue" and therefore did not affect the ALJ's decision about whether plaintiff was disabled beginning on or before January 17, 2019.  Id. at 2.

### E.  The Arguments of the Parties

In support of reversal, plaintiff advances multiple arguments regarding purported errors made by the ALJ and the Appeals Council.  See Dkt. Nos. 13, 19-1.  With respect to the Appeals Council, plaintiff argues that (1) the Appeals Council improperly determined that Dr. Calkins' opinion did not pertain to the relevant period; (2) the Appeals Council failed to properly consider the opinion of Dr. Calkins under the treating physician rule; and (3) there is a reasonable probability that Dr. Calkins' opinion would change the ALJ's disability determination if it were reviewed.  See Dkt. No. 9 at 9-16.  In response, the Commissioner concedes that the Appeals Council erred in concluding that Dr. Calkins' opinion did not relate to the period at issue, but argues that the error was harmless because (1) there is no reasonable probability the new evidence submitted to the Appeals Council would have changed the outcome; and (2) there is no record evidence to support plaintiff's contention that Dr. Calkins should be considered a treating physician.  See Dkt. No. 18 at 4-8.

With respect to the ALJ, plaintiff argues that (1) the ALJ failed to assess any functional limitations with respect to plaintiff's need to change positions on a frequent basis; (2) the ALJ failed to assess any limitations with respect to plaintiff's time off task and absenteeism; and (3) the ALJ failed to include appropriate limitations on social

interaction.  See Dkt. No. 13 at 19-27.  In response, the Commissioner argues that (1) plaintiff has not established greater functional limitation than what was provided for in the RFC, and (2) the ALJ's RFC and disability determination are supported by substantial evidence.  See Dkt. No. 18 at 10-22.

## II.  Legal Standards

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review  . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v.

Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

### B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  The Treating Physician Rule

The Second Circuit has long recognized the 'treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a [plaintiff's] treating physician as

to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must explicitly consider, inter alia, "'(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required.  Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32)).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the plaintiff replacing the consideration of the treatment relationship between the source and the plaintiff. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In Estrella v. Berryhill, the Second Circuit addressed the Commissioner's failure to

"explicitly" apply the regulatory factors set out in <u>Burgess</u> when assessing the weight to accord to a treating physician's opinion. 925 F.3d 90 (2d Cir. 2019).  The <u>Estrella</u> Court explained that such a failure is a procedural error and remand may be appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]' " <u>Id.</u> at 96 (alteration in original) (quoting <u>Halloran</u>, 362 F.3d at 32). The Court clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." <u>Estrella</u>, 925 F.3d at 96 (quoting <u>Halloran</u>, 362 F.3d at 32). The Court also noted the question "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is answered by addressing "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." <u>Estrella</u>, 925 F.3d at 96.

### III.    Legal Analysis

### A.    Appeals Council Review

"A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the administrative process of adjudicating claims for benefits under the Social Security Act." <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996).  At this step, the "Social Security regulations expressly authorize a [plaintiff] to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." <u>Id.</u> (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). "'[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision.'" <u>Lesterhuis v. Colvin</u>, 805 F.3d 83, 87 (2d Cir. 2015) (quoting <u>Perez</u>, 77 F.3d at 45).

In this case, following the ALJ's decision, plaintiff made multiple submissions of new evidence, including Dr. Calkins' March 15, 2019, opinion.  T. at 9-11.  The cover letter enclosing Dr. Calkin's opinion also references "Medical Records dated August 21, 2017 consisting of 6 pages" but no other notes from Dr. Calkins appear in the record.  Id. at 9.  In concluding that there was no basis to disturb the ALJ's determination, the Appeals Council summarily held that Dr. Calkins' opinion "does not relate to the period at issue, and "[t]herefore it does not affect the decision about whether you were disabled beginning on or before January 17, 2019."  Id. at 2.

Although it is true that Dr. Calkins completed the opinion form after the ALJ's decision, it "cannot be deemed irrelevant solely because of timing."  Newbury v. Astrue, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).  Indeed, Dr. Calkins stated that her opinion addressed plaintiff's condition dating back to December 4, 2018, which predates the ALJ's January 17, 2019 decision.

The Court agrees with plaintiff that the Appeals Council erred in finding that Dr. Calkins' opinion was not related to the relevant time period merely because it was rendered approximately two months after the ALJ's decision.  See Amanda L.C. v. Comm'r of Soc. Sec., No. 3:19-CV-817 (GTS), 2020 WL 4783169, at *7 (N.D.N.Y. August 18, 2020) (remanding where Appeals Council found that opinion dated one month after ALJ's decision was not related to the relevant time period without further analysis); see also Gurnett v. Berryhill, No. 16-CV-955-FPG, 2018 WL 3853387, at *4 (W.D.N.Y. Aug. 14, 2018) ("The Appeals Council's cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning,

is insufficient."). "Examinations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses," and "[t]he categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is an error as a matter of law." Davidson v. Colvin, No. 1:12-CV-0316 (MAD/VEB), 2013 WL 5278670, at *8 (N.D.N.Y. Sept. 18, 2013) ("The Commissioner defends the Appeals Council's refusal to consider Dr. Deutch's assessment because the treating psychiatrist's opinion was rendered after the ALJ Rodriguez's decision. The Commissioner thus claims that the opinion did not apply to the period prior to the ALJ's decision. However, the assessment post-dated the decision by less than one month. This brief lapse of time, without more, does not justify summary dismissal of the physician's findings."); see also Pollard, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of Ms. Pollard's claims.  To the contrary, the evidence directly supports many of her earlier contentions regarding David's condition.  It strongly suggests that, during the relevant time period, David's condition was far more serious than previously thought and that additional impairments existed when David was younger.").

Dr. Calkins' opinion addressed plaintiff's ability to sit, stand, and walk, as well as her need to change positions on a regular basis, dating back to December 2018.  T. at 11.  It also addressed the amount of time that plaintiff would be off-task and how often plaintiff would miss work due to her impairments.  Id. at 10-11.  The ALJ considered all of these issues as part of her determination, based in part on consideration of a variety of medical opinions, as outlined above.  Thus, the new evidence presented to the Appeals

Council in the form of Dr. Calkins' opinion is "potentially material," and must be reviewed on remand.  Lugo v. Berryhill, No. 18-CV-2179 (JGK/RWL), 2019 WL 4418649, at *16 (S.D.N.Y. May 8, 2019), report and recommendation adopted, 390 F. Supp. 3d 453 (S.D.N.Y. 2019).

"[W]hen [a plaintiff] submit[s] to the Appeals Council treating-physician opinions on the nature and severity of their impairments during the relevant period of disability, 'the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to' that opinion.'" Kurten v. Comm'r of Soc. Sec., No. 18-CV-0174 (JWF), 2019 WL 4643606, at *3 (W.D.N.Y. Sept. 24, 2019) (quoting Djuzo v. Colvin, No. 5:13-CV-272 (GLS/ESH), 2014 WL 5823104, at *3 (N.D.N.Y. Nov. 7, 2014)).  Notably, it is not sufficient "for the Appeals Council to merely acknowledge that they reviewed new evidence from a treating physician without providing such reasoning."  Seifried ex rel. A.A.B. v. Comm'r of Soc. Sec., No. 6:13-CV-0347 (LEK/TWD), 2014 WL 4828191, at *4 (N.D.N.Y. Sept. 29, 2014) (citing Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009)).  As a result, "[r]emand may be appropriate where the Appeals Council fails to discuss a newly submitted treating physician's opinion or 'fails to provide the type of explanation required by the treating physician rule when denying [the p]laintiff's request for review.'"  Samantha D. v. Comm'r of Soc. Sec., No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *4 (N.D.N.Y. Mar. 11, 2020) (quoting Djuzo, 2014 WL 5823104, at *4-*5); see Amanda L. C. v. Comm'r of Soc. Sec., No. 3:19-CV-0817 (GTS), 2020 WL 4783169, at *6 (N.D.N.Y. Aug. 18, 2020) (observing that "remand is only appropriate where there is a 'reasonable possibility' that this evidence would have influenced the ALJ to decide the disability determination differently").

The application of treating physician rule also requires remand of this case.[4] Plaintiff described Dr. Calkins as a "treating source" in her submission to the Appeals Council.  T. at 9.  The opinion itself references "the diagnoses for the conditions for which you treat the above-named" patient.  Id. at 10.  Accordingly, under the treating physician rule, the Appeals Council was obligated to explain what weight—if any—it was affording to Dr. Calkins' opinion and provide an explanation for its decision.  The Appeals Council not only failed to provide "good reasons" for disregarding the opinion of an apparent treating physician, it did not provide any reasons. In this case, such failure is reversible error.

The summary dismissal of Dr. Calkins' opinion wholly fails to indicate whether the Appeals Council applied the treating physician rule correctly or even at all, which frustrates meaningful review by the Court.  See Stadler v. Barnhart, 464 F. Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination[.]" (quoting Rice v. Barnhart, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)); see also Davis v. Saul, No. 19 CIV. 02974 (JCM), 2020 WL 2094096, at *12 (S.D.N.Y. May 1, 2020) ("This threadbare statement lacks any reasoning that sheds light on 'why the Appeals Council found the proffered evidence immaterial,' and thus 'deprives the Court of its ability to determine whether the Commissioner's decision is supported by substantial evidence.'"); Kurten, 2019 WL

---

[4] The SSA repealed the Treating Physician Rule effective March 27, 2017. See 20 C.F.R. §§ 404.1527, 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844, *5867-68 (Jan. 18, 2017). However, because plaintiff's claim was filed before the effective date, the treating physician rule still applies to this case.

4643606, at *4 (noting that the "boilerplate denial of the new medical source statement from [a doctor] failed to satisfy the Commissioner's own regulations requiring that it give good reasons for rejecting a treating source opinion."). It is clear that the Commissioner must—acting either through the Appeals Council or the ALJ—properly evaluate a treating physician's opinion and provide good reasons for that evaluation.

In addition, the undersigned is unable to conclude with certainty that the additional evidence does not show a reasonable probability that it would change the outcome of the decision. See 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (the Appeals Council will review a case if, inter alia, "there is a reasonable probability that the additional evidence would change the outcome of the [challenged ALJ] decision"). The Appeals Council was presented with a treating physician opinion that would undermine the RFC in significant ways if it were be accepted. Dr. Calkins opined that plaintiff needed to change positions on a regular basis, a finding that the ALJ had rejected when raised by non-acceptable medical source PA Zelesnikar. T. at 10-11, 32. Dr. Calkins also opined that plaintiff would be off-task at least twenty percent of the workday and would miss more than four days of work per month, due to her impairments. Id. at 10. If these statements were credited, they would preclude full-time employment, based on the testimony of the vocational expert. See T. at 217 ("If an individual is off task 15 percent or more throughout the normal workday, there would be no work in the national economy for such an individual . . . .If an individual is missing one to two days a month consistently, one to two days, there would be no work.") As a result, if the ALJ gave Dr. Calkins' opinion even some deference as a treating physician, there is a reasonable probability that this new evidence could have led to a different outcome. On this record, the Court cannot conclude with

24

any confidence that plaintiff's claim would have been decided the same way in the absence of these errors by the Appeals Council.

As the Appeals Council did not give the additional evidence controlling weight—or even explain why it did not do so—pursuant to the <u>Burgess</u> factors, the proper course is to remand the matter to the Commissioner for reconsideration in light of the new evidence to "provide the type of explanation required under the treating physician rule." <u>Farina v. Barnhart</u>, No. 04-CV-1299 (JG), 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005); <u>see Flagg v. Colvin</u>, No. 5:12-CV-0644 (GTS/VEB), 2013 WL 4504454, at 7 (N.D.N.Y. Aug. 22, 2013) (explaining that remand for reconsideration of new medical evidence is required where the Appeals Council's failure to provide good reasons for discounting a treating physician's opinion frustrates meaningful review.).

To be sure, it is entirely possible the Commissioner could still reach the same conclusion after weighing the additional evidence.  The Commissioner also suggests, not unreasonably, that dismissal of Dr. Calkins' opinion was justifiable because the record did not include clinical findings or other treatment records that would support her findings or establish her role as a treating physician.  Dkt. No. 18, at 5-6.  However, such post hoc justifications are inadequate in this case.[5]  The Appeals Council, like the ALJ, has an

---

[5] The Appeals Council never questioned Dr. Calkins' status as a treating source before rejecting her opinion.  <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.").  Even if Dr. Calkins did not qualify as a treating physician, it would not have justified the rejection of the opinion based solely on timing.  <u>See Hollinsworth v. Colvin</u>, No. 15-CV-543-FPG, 2016 WL 5844298 at *4 (W.D.N.Y. October 6, 2016) ("the fact that Dr. Ilozue was not a 'treating physician' does not mean that the Appeals Council was entitled to ignore her report entirely . . . . [T]he Appeals Council has a duty under section 416.1470(b) to consider additional evidence that is new, material, and relates to the time on or before the ALJ's decision.  Thus, although the Appeals Council was not required to treat Dr. Ilozue's report as a treating source opinion and give 'good reasons' for rejecting it, the Appeals Council was still obligated to at least consider the report rather than summarily rejecting it without any consideration at all").

affirmative duty to develop the record.  See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at * 15 (E.D.N.Y. Aug. 28, 2009); Joe v. Apfel, No. 97-CV-772, 1998 WL 683771, at *5 (W.D.N.Y. 1998) (remanding because the "Commissioner erred in failing to develop the record at the Appeals Council level of review"); see also Valerio v. Comm'r of Social Sec., No. 08-CV-4253, 2009 WL 2424211, at *11 (E.D.N.Y. Aug. 6, 2009) ("Given the ALJ's duty to develop the record sua sponte, the Appeals Council may not reject the treating physician's conclusions based solely on a lack of clear medical evidence or inconsistency without first attempting to fill the gaps in the administrative record.").

As the errors by the Appeals Council deprived plaintiff of the substantial right to have her disability determination made according to the correct legal principles and based on substantial evidence, remand is required.  As the Court has determined that remand is warranted for proper consideration of Dr. Calkins' opinion, as well as further development of the record, the Court declines to address the parties' remaining arguments.  See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13-CV-6844 (LGS/DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").  Upon remand, the ALJ may consider these arguments as deemed appropriate.

## IV.     Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for judgement on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that the matter is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated:  September 3, 2021
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge